# EXHIBIT A

# LOEVY & LOEVY
## ATTORNEYS AT LAW

312 N. May Street

Suite 100
Chicago, Illinois 60607

Arthur Loevy
Michael Kanovitz
Kurt Feuer
Russell Ainsworth
Samantha Liskow
Bradley Block
Tara Thompson

Telephone 312.243.5900
Facsimile 312.243.5902

Jon Loevy
Danielle Loevy
Amanda Antholt
Mark Loevy-Reyes
Gayle Horn
Matthew Jenkins
Gregory Swygert

Website: www.loevy.com
Email: loevylaw@loevy.com

# FAX COVER SHEET

**DATE:** April 9, 2008

**RE:** *Gutman v. City of Chicago, 08 C 380*

**TO:** (312) 744-3989
Kenneth Robling
City of Chicago Dept. of Law
30 North LaSalle St., **Suite 1020**
Chicago, IL 60602

(312) 744-3989
Marcela Sanchez
City of Chicago Dept. of Law
30 North LaSalle St., **Suite 1020**
Chicago, IL 60602

**PAGES TO FOLLOW:** 15

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR DISTRIBUTION OF THE COMMUNICATION TO OTHER THAN THE INTENDED RECIPIENT IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AT (312) 243-5900 AND RETURN THE ORIGINAL MESSAGE TO US VIA U.S. MAIL AT THE ABOVE ADDRESS.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ERIC GUTMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) 08 C 380<br>CITY OF CHICAGO, CHICAGO POLICE )<br>OFFICERS RICHARD SANABRIA AND ) Judge Dow<br>JOSE MARTINEZ, and CHICAGO POLICE ) Magistrate Judge Brown<br>SERGEANT PHILIP GRECO, JR., )<br>)<br>Defendants. ) JURY TRIAL DEMANDED | |

**FIRST AMENDED COMPLAINT**

Plaintiff, ERIC GUTMAN, by and through his attorneys, LOEVY & LOEVY, complaining of Defendants, CITY OF CHICAGO and CHICAGO POLICE OFFICERS RICHARD SANABRIA, JOSE MARTINEZ, and SERGEANT PHILIP GRECO, JR. (collectively, "Defendant Officers"), states as follows:

### Introduction

1. This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action under 28 U.S.C. §§ 1331 and 1367.

3. Venue is proper as Plaintiff is a resident of this judicial district and Defendant City of Chicago is a municipal corporation located here. Further, the events giving

rise to the claims asserted here all occurred within this district.

### Parties

4. Plaintiff, Eric Gutman, was at all relevant times a citizen of the United States and Chicago, Cook County, Illinois.

5. Defendants, Officers Sanabria, Martinez and Greco, were and are police employees of the City of Chicago.

6. Defendant City of Chicago is an Illinois Municipal Corporation, and was and is the employer of Defendants Sanabria, Martinez and Greco. The City of Chicago is responsible for the acts of Defendants Sanabria, Martinez and Greco while employed by the City of Chicago and while acting within the scope of their employment. Defendant City of Chicago is also liable as an independant tortfeasor pursuant to Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978), for the constitutional violations of Defendants Sanabria, Martinez and Greco, and any as-yet-unknown defendants who are agents of the City of Chicago.

### Factual Allegations

7. Plaintiff, Eric Gutman, is a 27-year-old physics graduate student at the University of Chicago. Before moving to Chicago, he received an undergraduate degree from Columbia University in New York, then served in the United States Navy.

8. On or about the evening of October 23, 2007, Mr. Gutman was driving to his friend's house in Chicago's Lakeview neighborhood when he encountered a man standing in the middle of Aldine Street. The man, who was talking to a driver, was blocking Mr. Gutman's path.

9. After waiting, Mr. Gutman honked his horn in order to alert the man that he could not get by.

10. The man began walking toward Mr. Gutman's car, and at this point Mr. Gutman saw that the man was a uniformed Chicago police officer.

11. As the Defendant Officer approached, Mr. Gutman rolled down his window. The officer began to scream profanities at him.

12. The officer then told Mr. Gutman that he was investigating a theft. When Mr. Gutman responded that he had not known that, the officers said, "Well now you fucking know, you asshole."

13. Finally, the officer walked away. With his way no longer blocked, Mr. Gutman was able to drive down the street.

14. Mr. Gutman parked his car on a nearby street and walked back to Aldine. He saw the officer seated in a squad car with another Defendant Officer. Mr. Gutman approached the car and politely asked the officer for his badge number, intending to file a complaint regarding the officer's abusive language.

3

15. To Mr. Gutman's request, the officer responded "are you fucking kidding me?" and rapidly exited his car. The officer then twisted Mr. Gutman's arms behind his back and tackled him face-first to the ground, where Mr. Gutman's hand was cut on a piece of metal.

16. The Defendant Officer then handcuffed Mr. Gutman behind his back, yanked him up by the handcuffs, and dragged him into the police car.

17. For approximately one half hour, the officer and his partner kept Mr. Gutman in their squad car, saying nothing to him. When Mr. Gutman said that he thought his hands were bleeding, the attacking officer looked at his hands and saw that he was cut. Neither Defendant Officer called for medical attention.

18. Finally, another Defendant Officer, a sergeant, arrived on the scene. After talking with the officers, he asked Mr. Gutman for his driver's license, and upon learning where Mr. Gutman had moved from, said "we don't do things here like they do in Texas."

19. The sergeant also said to Mr. Gutman words to the effect of, "we'll let you off tonight, but next time you may not be so lucky." After searching Mr. Gutman, the Defendant Officers let him go without citing him with any offense.

20. Mr. Gutman went to a nearby police station, where he told a supervisor about what the officers had done. A police department employee took photos of his injured hands and wrists.

21. Mr. Gutman then went to an emergency room, where he learned that he had two sprained wrists.

22. The next day, Mr. Gutman drove to the Office of Professional Standards ("OPS") headquarters and gave a statement. An investigator told Mr. Gutman that OPS would be able to identify the officers that day.

23. OPS has never contacted Mr. Gutman about whether they identified the officers, or about the general progress of their investigation.

### City of Chicago's Failure to Train, Discipline and Control

24. The above-described treatment of a civilian by Chicago police is not uncommon in this City.

25. Municipal policy-makers have long been aware of the City of Chicago's policy and practice of failing to properly train, monitor and discipline its police officers:

a. Following two high-profile, unjustified police shootings in 1999, the City Council held public hearings. On September 28, 1999, then-Superintendent of the Chicago Police Department Terry Hillard gave a speech highlighting the problems with the City of Chicago's policies and practices relating to the use of force. Superintendent Hillard specifically noted the need for (1) better in-service training on the use of force; (2) officer accountability for the use of force; and (3) early detection of potential problem officers.

b. In a review commissioned by the Superintendent, John Marshall Law School found that although the City of Chicago's policies on the use of force were in compliance with the law, more training of police officers was necessary.

c. In January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution that stated: "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

d. A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), made up of more than one hundred community groups, confirmed the City Council resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct. The JCGC findings were presented to Mayor Daley, Superintendent Hillard and the Chicago Police Board.

e. Two years later, Garcia v. City of Chicago, 2003 WL 22175618, *2 (N.D.Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department.

f. Indeed, by its own accounting, in 2006 the City of Chicago sustained only two percent of the complaints that civilians brought against police officers for the use of excessive force. An even smaller percentage of officers were actually disciplined for such conduct.

26. Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address that failure.

27. In 1996, the City of Chicago intentionally abandoned a program designed to track police officers repeatedly acting in an abusive manner because of opposition by the police union. The City promptly deleted all data contained in the program, including the list of problem officers.

28. In 2000 and 2001, the City continued to refuse to implement a system allowing for detection of repeat police officer offenders, despite the fact that the Commission on Accreditation for Law Enforcement Agencies adopted a standard mandating such a system for large police departments such as Chicago's.

29. In 2003, although the City of Chicago and the police union negotiated a new contract allowing the Chicago Police Department to use unsustained Office of Professional Standards ("OPS") cases "to identify patterns of suspected misconduct about which the public and regulatory agencies are so

7

intensely and legitimately concerned," no such pattern analysis has been implemented.

30. Finally, the City of Chicago's training of its officers has not changed since 1999, despite repeated promises by the City and City policymakers for more comprehensive training programs.

### Count I. -- 42 U.S.C. § 1983
### Excessive Force

31. Each Paragraph of this Complaint is incorporated herein.

32. As described above, the conduct of one or more of the Defendant Officers constituted excessive force in violation of the United States Constitution.

33. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

34. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

35. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City in that:

   a. As a matter of both policy and practice, the City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to

8

adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

   b. As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

   c. As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

   d. City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so.

   e. The City of Chicago has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

36. As a result of the Defendant Officers' unjustified and excessive use of force and the City's policy and practice, Plaintiff has suffered injury, including emotional distress.

37. The misconduct described in this Count and the following counts was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, CITY OF CHICAGO, is liable for their actions.

### Count II -- 42 U.S.C. § 1983: Unlawful Detention

38. Each Paragraph of this Complaint is incorporated herein.

39. As described above, the Defendant Officers unlawfully detained Plaintiff without justification and without probable cause.

40. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

41. As a result of the unjustified violation of Plaintiff's rights by the Defendant Officers, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

### Count III -- 42 U.S.C. § 1983 Unreasonable Search and Seizure

42. Each Paragraph of this Complaint is incorporated herein.

43. As described above, Plaintiff was searched by one or more of the Defendant Officers in a manner which violated the Fourth Amendment.

44. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

45. As a result of the unjustified violation of Plaintiff's rights by the Defendant Officers, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

### Count IV -- 42 U.S.C. § 1983
### Failure to Intervene

46. Each Paragraph of this Complaint is incorporated herein.

47. As described more fully above, one or more Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

48. Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

49. As a result of Defendant Officers' failure to intervene, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

### Count V - State Law Claim:
### Assault and Battery

50. Each Paragraph of this Complaint is incorporated herein.

51. As described in the preceding paragraphs, the conduct of one or more Defendant Officers, acting under color of law and within the scope of his employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Mr. Gutman's bodily injuries.

52. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Gutman's constitutional rights.

53. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

54. As a result of the offensive touching, undertaken pursuant to the City's policy and practice as described above, Mr. Gutman sustained bodily and other injuries, including but not limited to a reasonable apprehension of great bodily harm.

### Count VI - State Law Claim:
### False Imprisonment

55. Each Paragraph of this Complaint is incorporated herein.

56. Mr. Gutman was arrested and imprisoned, and thereby had his liberty to move about unlawfully restrained,

despite Defendant Officers' knowledge that there was no probable cause for doing so.

57. Defendant Officers' actions set forth above were undertaken intentionally, with malice and reckless indifference to Mr. Gutman's constitutional rights and to the rights of others.

58. As a result of the above-described wrongful infringement of Mr. Gutman's rights, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

### Count VII -- State Law Claim
### Respondeat Superior

59. Each Paragraph of this Complaint is incorporated herein.

60. In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

61. Defendant City of Chicago is liable as principal for all torts committed by its agents.

### COUNT VIII -- State Law Claim
### Indemnification

62. Each Paragraph of this Complaint is incorporated herein.

63. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for

13

which employees are liable within the scope of their employment activities.

64. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, ERIC GUTMAN, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, CHICAGO POLICE OFFICERS RICHARD SANABRIA, JOSE MARTINEZ, and SERGEANT PHILIP GRECO, JR., awarding compensatory damages and attorneys' fees, along with punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff, ERIC GUTMAN, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiffs

Arthur Loevy
Jon Loevy
Samantha Liskow
LOEVY & LOEVY
312 North May St
Suite 100
Chicago, IL 60607
(312) 243-5900

15