IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC GUTMAN, | ) | |
| | ) | No. 08 C 380 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Dow |
| | ) | |
| CITY OF CHICAGO, CHICAGO POLICE | ) | Magistrate Judge Brown |
| OFFICERS RICHARD SANABRIA AND | ) | |
| JOSE MARTINEZ, and CHICAGO POLICE | ) | |
| SERGEANT PHILIP GRECO, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER, DEFENSES AND JURY DEMAND TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant City of Chicago (the "City"), by its attorney Mara S. Georges, Corporation Counsel of the City of Chicago, answers plaintiff's first amended complaint as follows:

**Introduction**

1.      This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**ANSWER:**    The City admits that plaintiff purports to bring Counts I through IV of his first amended complaint under 42 U.S.C. § 1983 to redress the alleged deprivation under color of law of plaintiff's rights as secured by the United States Constitution.  The City denies the remaining allegations in this paragraph.

**Jurisdiction and Venue**

2.      This Court has jurisdiction of the action under 28 U.S.C. §§ 1331 and 1367.

**ANSWER:**    The City admits the allegations in this paragraph.

3.    Venue is proper as Plaintiff is a resident of this judicial district and Defendant City of Chicago is a municipal corporation located here.  Further, the events giving rise to the claims asserted here all occurred within this district.

**ANSWER:**    The City admits that it is a municipal corporation located in this judicial district and that venue is proper in that the alleged events giving rise to the claims asserted in plaintiff's complaint occurred within this district.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

## Parties

4.    Plaintiff, Eric Gutman, was at all relevant times a citizen of the United States and Chicago, Cook County, Illinois.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

5.    Defendants, Officers Sanabria, Martinez and Greco, were and are police employees of the City of Chicago.

**ANSWER:**    The City admits that, at all times relevant to plaintiff's first amended complaint, Defendants Sanabria and Martinez were employed as Chicago Police Officers by the City and Defendant Greco was employed as a Chicago Police Sergeant by the City.

6.    Defendant City of Chicago is an Illinois Municipal Corporation, and was and is the employer of Defendants Sanabria, Martinez and Greco.  The City of Chicago is responsible for the acts of Defendants Sanabria, Martinez and Greco while employed by the City of Chicago and while acting within the scope of their employment.  Defendant City of Chicago is also liable as an independent tortfeasor pursuant to Monell v. New York City Dept. of City Services, 436 U.S. 658, 694 (1978), for the constitutional violations of Defendants Sanabria, Martinez and Greco, and any as-yet-unknown agents of the City of Chicago.

**ANSWER:**    The City admits that it is a municipal corporation duly incorporated under the laws of the State of Illinois.  The City further admits that Defendants Sanabria, Martinez and Greco were employed by the City at all times relevant to plaintiff's first amended complaint.  The City states that plaintiff's allegation that the City is responsible for the acts of Defendants Sanabria, Martinez and Greco while employed by the City and while acting within the scope of their employment is a vague, incomplete and/or incorrect statement of the nature of the City's liability under the doctrine of *respondeat superior* under Illinois law; therefore, this allegation is denied.  The City further states that plaintiff's allegation that the City is liable for the constitutional violations of Defendants Sanabria, Martinez and Greco, and any as-yet-unknown agents of the City is a vague, incomplete and/or incorrect statement of the nature of the City's liability under <u>Monell</u>; therefore, this allegation is denied.

## Factual Allegations

7.    Plaintiff, Eric Gutman, is a 27-year-old physics graduate student at the University of Chicago.  Before moving to Chicago, he received an undergraduate degree from Columbia University in New York, then served in the United States Navy.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

8.    On or about the evening of October 23, 2007, Mr. Gutman was driving to his friend's house in Chicago's Lakeview neighborhood when he encountered a man standing in the middle of Aldine Street.  The man, who was talking to a driver, was blocking Mr. Gutman's path.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

9.      After waiting, Mr. Gutman honked his horn in order to alert the man that he could not get by.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

10.      The man began walking toward Mr. Gutman's car, and at this point Mr. Gutman saw that the man was a uniformed Chicago police officer.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

11.      As the officer approached, Mr. Gutman rolled down his window.  The officer began to scream profanities at him.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

12.      The officer then told Mr. Gutman that he was investigating a theft.  When Mr. Gutman responded that he had not known that, the officers [sic] said, "Well now you fucking know, you asshole."

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

13.      Finally, the officer walked away.  With his way no longer blocked, Mr. Gutman was able to drive down the street.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

14.      Mr. Gutman parked his car on a nearby street and walked back to Aldine.  He saw the officer seated in a squad car with another officer.  Mr. Gutman approached the car and

-4-

politely asked the officer for his badge number, intending to file a complaint regarding the officer's abusive language.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

15.    To Mr. Gutman's request, the officer responded "are you fucking kidding me?" and rapidly exited his car.  The officer then twisted Mr. Gutman's arms behind his back and tackled him face-first to the ground, where Mr. Gutman's hand was cut on a piece of metal.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

16.    The Defendant Officer then handcuffed Mr. Gutman behind his back, yanked him up by the handcuffs, and dragged him into the police car.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

17.    For approximately one half hour, the officer and his partner kept Mr. Gutman in their squad car, saying nothing to him.  When Mr. Gutman said that he thought his hands were bleeding, the attacking officer looked at his hands and saw that he was cut.  Neither Defendant Officer called for medical attention.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

18.    Finally, another Defendant Officer, a sergeant, arrived on the scene.  After talking with the officers, he asked Mr. Gutman for his driver's license, and upon learning where Mr. Gutman had moved from, said "we don't do things here like they do in Texas."

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

-5-

19.     The sergeant also said to Mr. Gutman words to the effect of, "we'll let you off tonight, but next time you may not be so lucky." After searching Mr. Gutman, the Defendant Officers let him go without citing him with any offense.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.


20.     Mr. Gutman went to a nearby police station, where he told a supervisor about what the officers had done.  A police department employee took photos of his injured hands and wrists.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.


21.     Mr. Gutman then went to an emergency room, where he learned that he had two sprained wrists.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.


22.     The next day, Mr. Gutman drove to the Office of Professional Standards ("OPS") headquarters and gave a statement. An investigator told Mr. Gutman that OPS would be able to identify the officers that day.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.


23.     OPS has never contacted Mr. Gutman about whether they identified the officers, or about the general progress of their investigation.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**City of Chicago's Failure to
Train, Discipline and Control**

24.        The above-described treatment of a civilian by Chicago police is not uncommon in this City.

**ANSWER:**    The City denies the allegations in this paragraph.

25.    Municipal policy-makers have long been aware of the City of Chicago's policy and practice of failing to properly train, monitor and discipline its police officers:

a.    Following two high-profile, unjustified police shootings in 1999, the City Council held public hearings. On September 28, 1999, then-Superintendent of the Chicago Police Department Terry Hillard gave a speech highlighting the problems with the City of Chicago's policies and practices relating to the use of force.  Superintendent Hillard specifically noted the need for (1) better in-service training on the use of force;  (2) officer accountability for the use of force; and (3) early detection of potential problem officers.

b.    In a review commissioned by the Superintendent, John Marshall Law School found that although the City of Chicago's policies on the use of force were in compliance with the law, more training of police officers was necessary.

c.    In January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution that stated: "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

d.    A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), made up of more than one hundred community groups, confirmed the City Council resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct. The JCGC findings were presented to Mayor Daley, Superintendent Hillard and the Chicago Police Board.

e.    Two years later, Garcia v. City of Chicago, 2003 WL 22175618, *2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct

investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department.

      f.      Indeed, by its own accounting, in 2006 the City of Chicago sustained only two percent of the complaints that civilians brought against police officers for the use of excessive force. An even smaller percentage of officers were [sic] actually disciplined for such conduct.

**ANSWER:**    The City denies that it has a policy and/or practice of failing to properly train, monitor and discipline its police officers. The City further denies that municipal policy-makers are or have been aware of any such policy or practice. The City states that the remaining allegations in this paragraph and its sub-parts are vague, incomplete, and/or incorrect, and therefore are denied.

      26.    Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address that failure.

**ANSWER:**    The City denies the allegations in this paragraph.

      27.    In 1996, the City of Chicago intentionally abandoned a program designed to track police officers repeatedly acting in an abusive manner because of opposition by the police union. The City promptly deleted all data contained in the program, including the list of problem officers.

**ANSWER:**    The City admits that in the 1990's the Chicago Police Department considered use of computer-based technology known as "Brainmaker" for purposes of developing and implementing an internal early investigation system for police officers. The City states that the remaining allegations in this paragraph are vague, incomplete and/or incorrect, and therefore are denied.

28.     In 2000 and 2001, the City continued to refuse to implement a system allowing for detection of repeat police officer offenders, despite the fact that the Commission on Accreditation for Law Enforcement Agencies adopted a standard mandating such a system for large police departments such as Chicago's.

**ANSWER:**    The City denies the allegations in this paragraph.

29.     In 2003, although the City of Chicago and the police union negotiated a new contract allowing the Chicago Police Department to use unsustained Office of Professional Standards ("OPS") cases "to identify patterns of suspected misconduct about which the public and regulatory agencies are so intensely and legitimately concerned," no such pattern analysis has been implemented.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

30.     Finally, the City of Chicago's training of its officers has not changed since 1999, despite repeated promises by the City and City policymakers for more comprehensive training programs.

**ANSWER:**    The City denies the allegations in this paragraph.

### Count I - 42 U.S.C. § 1983
### Excessive Force

31.     Each Paragraph of this Complaint is incorporated herein.

**ANSWER:**    The City's answers to each of the Paragraphs in this Complaint are incorporated herein by reference as though fully set forth.

32.     As described above, the conduct of one or more of the Defendant Officers constituted excessive force in violation of the United States Constitution.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

33.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

34.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

35.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the City in that:

    a.    As a matter of both policy and practice, the City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

    b.    As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

    c.    As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

    d.    City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so.

-10-

e.    The City of Chicago has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

**ANSWER:**    The City denies the allegations in this paragraph, including all of its sub-parts.

36.    As a result of the Defendant Officers' unjustified and excessive use of force and the City's policy and practice, Plaintiff has suffered injury, including emotional distress.

**ANSWER:**    The City denies that it has the policy and practice alleged in this paragraph.  The City further denies that a City policy or practice resulted in any injury to plaintiff.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

37.    The misconduct described in this Count and the following counts was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, CITY OF CHICAGO, is liable for their actions.

**ANSWER:**    The City admits, upon information and belief, based on Chicago Police Department records, that Defendants Sanabria, Martinez and Greco were acting within the scope of their employment in their encounter with plaintiff on October 23, 2007.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### Count II - 42 U.S.C. § 1983:
### Unlawful Detention

38.    Each Paragraph of this Complaint is incorporated herein.

**ANSWER:**    The City's answers to each of the Paragraphs in this Complaint are incorporated herein by reference as though fully set forth.

39.     As described above, the Defendant Officers unlawfully detained Plaintiff without justification and without probable cause.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

40.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

41.     As a result of the unjustified violation of Plaintiff's rights by the Defendant Officers, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

**ANSWER:**    The City denies that it has the policy and practice alleged in this paragraph.  The City further denies that a City policy or practice resulted in any injury to plaintiff.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### Count III - 42 U.S.C. § 1983
### Unreasonable Search and Seizure

42.     Each Paragraph of this Complaint is incorporated herein.

**ANSWER:**    The City's answers to each of the Paragraphs in this Complaint are incorporated herein by reference as though fully set forth.

43.     As described above, Plaintiff was searched by one or more of the Defendant Officers in a manner which violated the Fourth Amendment.

-12-

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

44.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

45.    As a result of the unjustified violation of Plaintiff's rights by the Defendant Officers, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

**ANSWER:**    The City denies that it has the policy and practice alleged in this paragraph.  The City further denies that a City policy or practice resulted in any injury to plaintiff.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

## Count IV - 42 U.S.C. § 1983
## Failure to Intervene

46.    Each Paragraph of this Complaint is incorporated herein.

**ANSWER:**    The City's answers to each of the Paragraphs in this Complaint are incorporated herein by reference as though fully set forth.

47.    As described more fully above, one or more Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

48.     Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

49.     As a result of Defendant Officers' failure to intervene, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

**ANSWER:**    The City denies that it has the policy and practice alleged in this paragraph.  The City further denies that a City policy or practice resulted in any injury to plaintiff.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

## Count V - State Law Claim:
## Assault and Battery

50.     Each Paragraph of this Complaint is incorporated herein.

**ANSWER:**    The City's answers to each of the Paragraphs in this Complaint are incorporated herein by reference as though fully set forth.

51.     As described in the preceding paragraphs, the conduct of one or more Defendant Officers, acting under color of law and within the scope of his employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Mr. Gutman's bodily injuries,

**ANSWER:**    The City admits, upon information and belief, based on Chicago Police Department records, that Defendants Sanabria, Martinez and Greco were acting within the scope of their employment in their encounter with plaintiff on October 23, 2007.  The City is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph.

52.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Gutman's constitutional rights.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph.

53.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph.

54.    As a result of the offensive touching, undertaken pursuant to the City's policy and practice as described above, Mr. Gutman sustained bodily and other injuries, including but not limited to a reasonable apprehension of great bodily harm.

**ANSWER:**    The City denies that it has the policy and practice alleged in this paragraph.  The

City further denies that a City policy or practice resulted in any injury to plaintiff.  The City is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph.

### Count VI - State Law Claim:
### False Imprisonment

55.    Each Paragraph of this Complaint is incorporated herein.

**ANSWER:**    The City's answers to each of the Paragraphs in this Complaint are incorporated

herein by reference as though fully set forth.

56.     Mr. Gutman was arrested and imprisoned, and thereby had his liberty to move about unlawfully restrained, despite Defendant Officers' knowledge that there was no probable cause for doing so.

**ANSWER:**     The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph.

57.     Defendant Officers' actions set forth above were undertaken intentionally, with malice and reckless indifference to Mr. Gutman's constitutional rights and to the rights of others.

**ANSWER:**     The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph.

58.     As a result of the above-described wrongful infringement of Mr. Gutman's rights, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

**ANSWER:**     The City denies that it has the policy and practice alleged in this paragraph.  The

City further denies that a City policy or practice resulted in any injury to plaintiff.  The City is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph.

**Count VII - State Law Claim**
**Respondeat Superior**

59.     Each Paragraph of this Complaint is incorporated herein.

**ANSWER:**     The City's answers to each of the Paragraphs in this Complaint are incorporated

herein by reference as though fully set forth.

-16-

60.    In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

**ANSWER:**    The City admits, upon information and belief, based on Chicago Police Department records, that Defendant Officers Sanabria, Martinez and Greco were members of the Chicago Police Department and were acting within the scope of their employment in their encounter with plaintiff on October 23, 2007.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

61.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:**    The City states that plaintiff's allegation that the City is liable for all torts committed by its agents is a vague, incomplete and/or incorrect statement of the nature of the City's liability under the doctrine of *respondeat superior* under Illinois law; therefore, this allegation is denied.

### COUNT VIII - State Law Claim
### Indemnification

62.    Each Paragraph of this Complaint is incorporated herein.

**ANSWER:**    The City's answers to each of the Paragraphs in this Complaint are incorporated herein by reference as though fully set forth.

63.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:**    The City admits the allegations in this paragraph.

64.    The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**    The City admits, upon information and belief, based on Chicago Police Department records, that Defendant Officers Sanabria, Martinez and Greco were members of the Chicago Police Department and were acting within the scope of their employment in their encounter with plaintiff on October 23, 2007.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

WHEREFORE, the Defendant City of Chicago prays that this Court enter judgment in its favor and against plaintiff on plaintiff's First Amended Complaint, award the City such costs and fees as allowed by law, and grant such further relief as this Court deems just and proper.

### JURY DEMAND

Defendant City of Chicago requests trial by jury.

### AFFIRMATIVE DEFENSES

1.    The Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") does not require the City to pay any tort judgment or settlement for any damages for which its employee was acting outside the scope of his employment.  745 ILCS 10/9-102 (2006).

2.    Defendant City is not liable to plaintiff if its employees or agents are not liable to the plaintiff.  745 ILCS 10/2-109 (2006).

3.    To the extent any employee or agent of Defendant City was acting within the scope of his or her employment, that employee or agent is not liable for his or her acts or

omissions in the execution or enforcement of the law, unless such act or omission constitutes wilful and wanton conduct.  745 ILCS 10/2-202 (2006).

4.     Defendant City is not liable for any injury caused by the act or omission of another person.  745 ILCS 10/2-204 (2006).

5.     Defendant City is not liable for injury proximately caused by the failure of an employee to take reasonable action to furnish or obtain medical care for a prisoner in his custody.  745 ILCS 10/4-105 (2007).

6.     Under the Tort Immunity Act, the City is not required to pay punitive or exemplary damages in any action brought directly or indirectly by the injured party or a third party.  745 ILCS 10/2-1-2 (2006).

7.     As to plaintiff's state law claims, the City is not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement, attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party."  See Kerns v. Engelke, 76 Ill. 2d 154, 166 (1979) (citations omitted).

8.     To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principle that plaintiff has a duty to mitigate, commensurate with the degree of failure to mitigate attributed to plaintiff by the jury in this case.

9.     To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by the negligent, willful, wanton and/or other wrongful conduct on the part of the plaintiff, any verdict or judgment obtained by plaintiff must be reduced by

-19-

application of the principles of comparative fault, by an amount commensurate with the degree of

fault attributed to plaintiff by the jury in this case.

      10.    Under <u>Monell v. Department of Social Services of City of New York</u>, 436

U.S. 658 (1978), the City is not liable under section 1983 for its employees' misconduct.


Dated: May 2, 2008                           Respectfully submitted,

                                        MARA S. GEORGES
                                        Corporation Counsel of the
                                        City of Chicago

                    By:    /s/ Marcela D. Sánchez_____
                                  KENNETH C. ROBLING
                                  MARCELA D. SÁNCHEZ
                                  Assistants Corporation Counsel

30 North LaSalle Street
Suite 1020
Chicago, IL 60602
(312) 744-4939/9332